UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

|  |  |
|---|---|
| HANNAH M.,[1] | Case No. 3:25-cv-00112-MTK |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**KASUBHAI,** United States District Judge:

Self-represented Plaintiff Hannah M. seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application

for disability insurance benefits ("DIB") under the Social Security Act ("SSA" or "Act"). This

Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). For the

following reasons, the Commissioner's final decision is affirmed.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

Page 1 — OPINION AND ORDER

## PROCEDURAL BACKGROUND

Plaintiff filed her application for DIB on November 15, 2021, alleging a disability onset date of October 30, 2021. Tr. 21.[2] Plaintiff's application was denied initially and upon reconsideration. Tr. 79, 85. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on December 7, 2023. Tr. 43. On December 19, 2023, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 18-35. The Appeals Council denied Plaintiff's request for review on November 18, 2024. Tr. 5-8. This appeal followed. ECF No. 1.

## FACTUAL BACKGROUND

Born in 1995, Plaintiff was 26 years old on her alleged disability onset date. Tr. 175. Plaintiff has a high school education and has worked as a line cook and server. Tr. 33, 412, 419.

## LEGAL STANDARD

The Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the

---

[2] "Tr." refers to the Transcript of Social Security Administrative Record provided by the Commissioner. ECF No. 8-1. This Opinion uses the page numbers assigned to that document in CM/ECF.

ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*;

Page 3 — OPINION AND ORDER

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual function capacity" ("RFC"), which is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations their impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, they are not disabled; if they cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

**THE ALJ'S DECISION**

At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2026, and that Plaintiff had not engaged in substantial gainful activity since October 30, 2021, the alleged onset date. Tr. 23. At step two, the ALJ found that Plaintiff had the following severe impairments: thyroid cancer; chronic idiopathic urticaria; depression; and anxiety. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that amounted to a listed impairment. Tr. 23-26. The ALJ then assessed Plaintiff's RFC and found Plaintiff was capable of performing a full range of work at all exertional levels with the following limitations:

> [S]he can never crawl, kneel, or climb ladders, ropes, or scaffolds. She can frequently climb ramps and stairs, balance, stoop, and crouch. She can frequently reach, handle, and finger. She can tolerate occasional exposure to extreme cold,

extreme heat, humidity, wetness, and atmospheric conditions such as fumes, odors, dust, gases, and poor ventilation. She can tolerate no exposure to hazards such as unprotected heights and moving mechanical machinery. She can understand, remember, and carry out simple and detailed tasks that can be learned in 30 days or less. She can tolerate occasional changes in a routine work setting.

Tr. 26.

At step four, the ALJ found that Plaintiff cannot perform any past relevant work. Tr. 33. At step five, the ALJ found, in light of Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform despite her impairments, including automobile vehicle assembler, bagger, sandwich maker, school bus monitor, usher, and children's attendant. Tr. 34. Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) rejecting Plaintiff's symptom testimony without clear and convincing reasons; (2) improperly discounting the opinion of Plaintiff's therapist Emily Fagan, MS, NCC; (3) failing to evaluate the combined effects of her impairments; and (4) improperly considering the vocational evidence provided. Pl.'s Br. 1, ECF No. 10.

## I.      Rejection of Plaintiff's Symptom Testimony

Plaintiff first argues that the ALJ improperly rejected her symptom testimony and did not provide clear and convincing reasons for doing so. *Id.* at 2; Pl.'s Reply 2, ECF No. 14.

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of their symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2007). First, the claimant must produce "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quotation marks and citation

omitted). The claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom[s] she has alleged; she need only show that it could reasonably have caused some degree of the symptom[s]." *Id.* (quotation and citation omitted).

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). To discredit a plaintiff's testimony regarding the degree of impairment, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Thus, the ALJ must specifically identify the testimony that they do not credit and explain what evidence undermines the testimony. *Holohan*, 246 F.3d at 1208. In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). The question is not whether the ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Id.* at 499.

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," they cannot reject subjective pain testimony solely on that basis. *Rollins v. Massanari*, 261 F.3d

853, 857 (9th Cir. 2001); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3d at 681).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce some degree of her symptoms. The ALJ did not completely reject Plaintiff's symptom testimony, but found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 27. Plaintiff contends that the ALJ failed to provide clear and convincing reasons for discrediting her testimony. For the reasons below, the Court disagrees.

### A.    Physical Symptom Testimony

Plaintiff stated in her application for benefits and hearing testimony that she was unable to work because she suffered from chronic urticaria, which caused her to break out in hives between one and three times a month. Tr. 27, 47-49. She testified that the hive outbreaks "can last three to five days." Tr. 50. She said that she took medication for the hives but continued to have outbreaks. Tr. 48. The medication was delivered by injection at home, which caused additional stress. Tr. 52. Plaintiff's hives typically impacted her hands, and occasionally she got them on her knees, elbows, and feet. Tr. 50. Hives on her hands prevented her from using her

hands or touching anything. Tr. 49-50. She avoided most household cleaners because they exacerbate hives. Tr. 49. She also could not use conditioner or wear makeup. Tr. 52.

Looking to the medical record, in November 2021, Plaintiff was seen for "onset of hive[s] (quarter sized) . . . described as itchy, red and raised and disappeared after 20 minutes." Tr. 543. Plaintiff noted that "small dime sized hives" that "cleared after 30 minute[s]" recurred over the next month and a half. Tr. 543. Plaintiff was diagnosed with chronic idiopathic urticaria. Tr. 544. In December 2021, Plaintiff's urticaria was "stable, improved with meds," though medical notes also showed "[u]rticarial plaques diffusely on the body" at that time. Tr. 552, 556. In January 2022, there were "[u]rticarial plaques on her neck." Tr. 659. Plaintiff's urticaria was otherwise "[m]ild" and "[i]mproving but starting to flare since tapering off [medications]." Tr. 659. Plaintiff's medical provider noted a "strong suspicion" that Plaintiff's urticaria was "due to thyroid cancer." Tr. 665; *see also* Tr. 1627 (Plaintiff's allergist noting that thyroid disease can worsen urticaria). Plaintiff's thyroid cancer was treated and showed no signs of recurrence as of December 2022. Tr. 1532.

In February 2022, Plaintiff reported "full body hives" and "hives [were] noted over [her] skin." Tr. 643-44. In March 2022, Plaintiff began taking a medication called Xolair and reported that her "hives worsened the week after this." Tr. 748. Hives were "confirmed on photos," though no rashes were noted during her physical exam. Tr. 748-49. Plaintiff was advised to follow up "a few weeks after her 6th dose of Xolair." Tr. 748.

Once Plaintiff began consistently injecting Xolair, she reported "feeling well" and received Xolair infusions with "no complaints" during visits in June and July 2022. Tr. 795-96, 805. Plaintiff similarly had "no complaints" in August and September 2022. Tr. 785, 789. Plaintiff's skin showed "no bruising or rashes" at a visit in August 2022. Tr. 793, 857. In

October and December 2022, Plaintiff reported that she was "feeling well," had no concerns, and was "doing well with her injections," which "[were] helping to keep her symptoms mild." Tr. 785, 1553. In March 2023, Plaintiff was again "feeling well" and had no concerns or complaints when receiving her Xolair injection. Tr. 1160-61. Plaintiff reported that her "hives [were] now fairly well controlled," with "occasional itching and a few hives, but otherwise under good control," and "no issues with the Xolair." Tr. 1230. No rashes were observed at that time. Tr. 1230. No rashes were observed during a June 2023 visit. Tr. 1070, 1075. In July 2023, medical records showed that "[d]ue to . . . insurance authorization issues, [Plaintiff] missed a few doses [of Xolair] and her urticaria ha[d] returned." Tr. 1046. She had restarted Xolair a few weeks earlier. Tr. 1046-47. In November 2023, Plaintiff noted "scattered, though not bothersome, urticaria on her current regiment" of Xolair. Tr. 906.

To start, Plaintiff's testimony shows little inconsistency with the medical record as to her urticaria. The record shows that Plaintiff experienced periods of itchy hives, but that she frequently had mild symptoms or no rashes because her urticaria was "well controlled" with Xolair. Tr. 1230. The largest inconsistency lies in Plaintiff's testimony that the outbreaks could last up to five days, as medical records show that they could also resolve within twenty or thirty minutes. Tr. 543. But even those facts are not entirely inconsistent.

Further, the ALJ accounted for Plaintiff's testimony regarding her hives and included in Plaintiff's RFC limitations "designed to accommodate periodic itchy hives," and "environmental limitations . . . designed to avoid triggering urticaria episodes or exacerbating her symptoms." Tr. 28. The Court recognizes that Plaintiff does not have the benefit of counsel and her argument is not fully developed on this point. The Court understands Plaintiff's argument that the ALJ improperly rejected her symptom testimony to be based on the following statement by the ALJ:

Page 9 — OPINION AND ORDER

> [T]he claimant's stable, improved urticaria, with reports of non-bothersome urticaria and mild severity, and general lack of complaints at treatment sessions, as well as frequent lack of observed rashes do not support additional limitations. While [Plaintiff] reported frequent, easily exacerbated, rashes, the record shows that her symptoms were generally well under adequate control.

Tr. 28-29 (citations omitted). To the extent that finding implicitly rejects Plaintiff's more severe symptom testimony, substantial evidence supports the ALJ's findings. *See* Tr. 27-29. As described above, the objective medical evidence shows that, with Xolair, Plaintiff largely had mild symptoms and periodic hive outbreaks that were manageable and "not bothersome." Tr. 906. Accordingly, the ALJ did not err in rejecting Plaintiff's testimony of more severe symptoms that conflicted with that evidence. *Carmickle*, 533 F.3d at 1161 (the ALJ may reject testimony that is inconsistent with objective medical evidence).

### B.    Mental Symptom Testimony

Plaintiff also testified that she was unable to work because of her anxiety and depression. Tr. 52. She reported panic attacks when at work and when walking in public. Tr. 52. She stated that she sleeps between four and five hours a night because of depression. Tr. 52-53. She was also "diagnosed with cancer, so [she] ha[s] a scar on [her] neck that doesn't help with [her] depression." Tr. 52. She "[couldn't] go outside or walk," so she retreated from her social life and spent most of her time at home watching TV and reading. Tr. 53.

The medical record shows that Plaintiff sometimes felt anxious but was often alert, oriented, and logical, with normal mood, behavior, affect, memory, and eye contact. While an ALJ may not require affirmative proof to corroborate symptom testimony, he may discredit testimony that is contradicted by the medical record. *Smartt*, 53 F.4th at 498. Here, the ALJ relied in part on the various findings from Plaintiff's complex psychological assessment, completed in July 2022. Tr. 29. In that assessment, the doctor found that Plaintiff had

"difficulties with anxiety" and "exhibited mild problems in the areas of attention and concentration," but generally had average or above average abilities and behavior. Tr. 764-66. The ALJ also detailed various exams where Plaintiff presented as logical, pleasant, cooperative, and of normal behavior, mood, and affect. Tr. 29.

As with Plaintiff's physical symptom testimony, the ALJ did not completely reject Plaintiff's mental symptom testimony, and imposed limitations based on her testimony and medical history. The ALJ accepted that Plaintiff's mental impairments affected her ability to work. Tr. 29. He held that her "depression and anxiety support a limitation to work with simple and detailed tasks that can be learned in 30 days or less . . . to accommodate attention deficits and avoid exacerbating [her] urticaria." Tr. 29. The ALJ explained that the record frequently evidenced Plaintiff's normal and logical behavior such that additional social limitations were not warranted. Tr. 29. The ALJ's findings and analysis of the record was "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." *Barnhart*, 278 F.3d at 958. Accordingly, the ALJ's findings with regard to Plaintiff's symptom testimony are supported by substantial evidence.

## II.    Medical Opinion Evidence

Plaintiff next argues that the ALJ improperly rejected the medical opinion of Plaintiff's therapist, Emily Fagan, M.S., NCC. Specifically, she contends that the ALJ's reasoning was insufficient because it was conclusory and unsupported by the record. Pl.'s Reply 2.

When evaluating medical opinion evidence, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion." 20 C.F.R. § 404.1520c(a). Instead, the ALJ "evaluate[s] the persuasiveness of medical opinions" by looking to enumerated factors, the "most important" of which are "supportability" and "consistency" of the opinions. 20 C.F.R. §§ 404.1520c(a), (c). Supportability is determined by whether the

medical source presents explanations and objective medical evidence to support their opinions. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors including the length, purpose, or extent of the treatment relationship; the frequency of the claimant's examinations; and whether there is an examining relationship. 20 C.F.R. § 404.1520c(c)(3). An ALJ is not, however, required to explain how they considered those secondary medical factors unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. 20 C.F.R. §§ 404.1520c(b)(2)-(3). The court must, moreover, consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

"An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). A medical opinion presented in a "check-the-box questionnaire" form cannot be rejected on that basis alone, but only when the questionnaire "do[es] not contain any explanation of the bases of their conclusions." *Id.* at 1155 (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740-41 (9th Cir. 2023) (noting that the Ninth Circuit has "accepted discounting of a medical opinion set forth in a checkbox form with little to no explanation").

Here, Ms. Fagan provided two medical opinions. Her April 2022 opinion stated that Plaintiff "reported experiencing hives which caused her an enormous amount of difficulty with her daily living activities" and "every time she moved it caused more hives." Tr. 739. Ms. Fagan

noted that Plaintiff "appeared distressed and uncomfortable during [their] telehealth sessions. . . . she reported that all she could do was lay on her bed and not move." Tr. 739. She opined that Plaintiff's hives and cancer diagnosis contributed to Plaintiff's depression. Tr. 739. She also stated that Plaintiff "reported not being able to get out of bed due to depression." Tr. 739.

Ms. Fagan's second opinion, from November 2023, provided a treatment summary of her sessions with Plaintiff. Tr. 1620. Ms. Fagan stated that "[i]n August 2021, sessions shifted to focus on [Plaintiff's] severe hives, impacting her daily life and wellbeing." Tr. 1620. Ms. Fagan opined that, though Plaintiff's cancer has been treated, "persistent hives contribute to ongoing anxiety and depression," and "continual skin issues have hindered full remission of [her] mental health symptoms." Tr. 1620. Plaintiff reported to Ms. Fagan "that her anxiety stems from constant worry about hives, while her depression is exacerbated by isolation, monotony, and limited environmental stimuli." Tr. 1620.

Ms. Fagan submitted an assessment in questionnaire form with her second opinion. Tr. 1622. Ms. Fagan assessed that Plaintiff had marked limitations in concentration and interaction with others, and mild limitations in adaptability and ability to understand, remember, or apply information. Tr. 1623. Ms. Fagan believed that fatigue, depression, panic, and hives would impair Plaintiff's abilities for approximately 20% of a workweek. Tr. 1623-24.

The ALJ found Ms. Fagan's opinions unpersuasive because they were unsubstantiated by treatment records and based on Plaintiff's self-reports, which were "not entirely consistent with the evidence." Tr. 32. As discussed above, the ALJ's conclusions regarding Plaintiff's urticaria and hives, and his decision to discount Plaintiff's self-reports of her symptoms, were supported by substantial evidence.

The ALJ's finding that Ms. Fagan was unpersuasive because her opinions were not substantiated by treatment records is also supported by substantial evidence. Medical opinions are considered "more persuasive" when they are consistent with other sources and supported by objective medical evidence. *See* 20 C.F.R. § 404.1520c(c)(1)-(2). Accordingly, the ALJ may reject a medical opinion where it is inconsistent with the treatment record and exam findings. *Woods*, 32 F.4th at 794. Here, Ms. Fagan's opinion as to Plaintiff's mental health is contradicted by the medical record as described by the ALJ, who correctly noted that Plaintiff's records show she largely had normal behavior, mood, and thinking. Tr. 32 (record citations omitted). Ms. Fagan's opinions contain no supporting treatment records to substantiate her opinions, which are based on Plaintiff's self-reports. Accordingly, the ALJ's finding that Ms. Hagan's opinions were unpersuasive is supported by substantial evidence.

## III.   Combined Impairments

Plaintiff next contends that the ALJ failed to address how her combined impairments limit her ability to work. She argues that the ALJ's decision fails to analyze how her "chronic urticaria, nausea, depression, and anxiety combine to affect reliability, attendance, and work capacity." Pl.'s Reply 2.

When determining the combined effect of physical or mental impairments, the ALJ must "consider the effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523(c). Should this combination of impairments be medically severe, the ALJ will "consider the combined impact of the impairments throughout the disability determination process." *Id.*

Here, the ALJ properly considered the combined effects of Plaintiff's impairments. First, the ALJ was "cognizant of the substantial overlap in symptomology between [Plaintiff's] different mental impairments," so Plaintiff's "psychological symptoms and their effect on [her]

Page 14 — OPINION AND ORDER

functioning [were] considered together." Tr. 23. Additionally, when determining Plaintiff's RFC, the ALJ "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe" to determine how her mental and physical impairments combined to limit her work capacity. Tr. 24; Tr. 28 ("Providers noted that thyroid disease could contribute to urticaria"); Tr. 29 ("This [limitation] is designed to accommodate attention deficits and avoid exacerbating the claimant's urticaria with the stress of more frequent changes or more complex work"); Tr. 29 ("The mental limitations . . . are designed in part to avoid triggering episodes of urticaria with stress"). The ALJ was cognizant of Plaintiff's "increased rashes with stress" and noted that those symptoms, combined with "problems with attention and concentration," supported some functional limitations. Tr. 29. Overall, the ALJ's analysis sufficiently considered the interplay between Plaintiff's symptoms and the limitations necessitated by her combined impairments.

## IV.    Vocational Evidence

Finally, Plaintiff argues that the jobs identified by the vocational expert ("VE") were incompatible with her medical needs.

An ALJ may rely on a VE's testimony to determine whether a claimant retains the ability to perform past relevant work at step four, or other work in the national or regional economy at step five. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The ALJ is required to include only the limitations contained in the RFC that are supported by substantial evidence in the hypothetical posed to a VE. *See id.* at 1163-65. In other words, limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Id.* Courts should uphold step four and five determinations "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Page 15 — OPINION AND ORDER

Here, the ALJ determined that Plaintiff had the RFC "to perform a full range of work, at all exertional levels," but with some limitations around physical tasks like kneeling, climbing, reaching, and handling, and other limitations around exposure to hazards, difficulty of work, and changes in work. Tr. 26. Based on that RFC, the ALJ, through the VE, then found that Plaintiff could perform "jobs that exist in significant numbers in the national economy." Tr. 33. Specifically, the ALJ found that Plaintiff could work as an automobile vehicle assembler, bagger, or sandwich maker. Tr. 34. The ALJ also considered that even if Plaintiff required additional limitations on her ability to handle and finger things, she could still work as a school bus monitor, usher, or children's attendant. Tr. 34.

Plaintiff argues that the VE identified four jobs—school bus monitor, usher, children's attendant, and surveillance system monitor[3]—that are incompatible with her medical needs. She contends that she requires "immediate access to hand washing" to manage her urticaria and therefore she cannot perform these jobs. Pl.'s Br. 2.

As discussed above, the ALJ did not err in finding that Plaintiff's urticaria was well managed and warranted only some limitations. Plaintiff did not testify about her need to access hand washing, and the ALJ relied on substantial evidence in rejecting her testimony of more severe symptoms. Additionally, Plaintiff does not take issue with the ALJ's findings that Plaintiff could also work as an automobile vehicle assembler, bagger, or sandwich maker. In sum, for all the reasons discussed above, substantial evidence supports the limitations imposed by the ALJ and the resultant findings of available jobs.

---

[3] The Commissioner correctly points out that the ALJ did not find that Plaintiff could work as a "surveillance system monitor." Def.'s Br. 9, ECF No. 13. While the VE mentioned jobs as a surveillance system monitor at Plaintiff's hearing, the ALJ did not rely on or incorporate that job into his ruling. This Court need not consider Plaintiff's argument as to that job.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court

AFFIRMS the Commissioner's decision.

DATED this 25th day of June 2026.

MUSTAFA T. KASUBHAI (he/him)
United States District Judge